ROCKINGHAM, JUNE, 1880.

ROLLINS, *Adm'r de bonis non of Arabella Rice,* v. RICE *& a.*

Where a will expressly authorizes a sale of land mentioned therein to be
made by any person legally qualified to administer the estate, it is not
necessary that a license for such sale be obtained from the probate
court by an administrator with the will annexed appointed after the
estate has been partially administered.

Under a will giving the residue of an estate to the eleven first cousins of
the testatrix, the administrator has no power or right to make any
other than an equal distribution of such residue to the eleven persons
named.

BILL IN EQUITY, praying for advice in the construction of the
residuary clauses of the will of Arabella Rice, whose estate the
plaintiff now represents, and in the disposition of certain real
estate.　The clauses of the will in question are:

" *Sixteenth.* I give, devise, and bequeath all the rest, residue,
and remainder of my estate, real, personal, and mixed (after the
payment of the foregoing bequests, and such further bequests, if
any I may make by codicils to this my will, and of all my debts
and funeral expenses, and the expenses of settling my estate, in-
cluding that of a gravestone, and including also all legacy duties
which I wish paid as a charge of administration and not deducted
from the said bequest), to my said first cousins; and in case of the
decease of any of my first cousins before my decease, leaving issue,
the share of said residue to which said cousin would have been
entitled, if then living, shall be paid over to his or her issue.

" *Seventeenth.* I hereby nominate and appoint my first cousins,
Thomas Coffin and John Coffin and Edwin Rice, to be the execu-
tors of this my last will and testament, and desire that they shall
not be required to give bonds with sureties to the judge of probate,
as I have full confidence in their ability and integrity; and I hereby
empower my said executors, or such of them as may act, or who-
ever shall be legally qualified to administer upon my estate, to sell
and convert into money any or all of the real or personal estate of
which I may die seized and possessed, and to convey a good title
thereto to the purchasers thereof, free from responsibility on their
part for the application of the purchase-money, and I desire my
executors to pay over said bequests, and to settle and distribute
my estate as soon as they conveniently can do so after my decease."

The bill alleges a will, its probate, the appointment of Edwin
T. Rice, executor, and that the defendants are, or represent, the
residuary legatees, twelve in number, under the will; the debts,

expenses, and general legacies have been paid; six of the residuary legatees, Ann P. Coffin, Susan G. Coffin, Charlotte G. Coffin, Charlotte P. Westinghausen, George G. Dyer, administrator of Thomas M. Coffin, and Samuel E. Sewall, administrator of Ann P. Westinghausen, have received each $3,500 in money, stocks and securities appraised at $3,480, and by suit on the executor's bond, $406.68; Mary A. P. Bowers has received $3,500 in money, and $946.54 by suit on the bond; George W. Rice has received $3,000 in money, and certain stocks, value not given; that George S. Rice, and George S. Rice and James P. Upham, executors of Elizabeth W. Upham, have each received the same amount of stocks as George W. Rice; Edwin T. Rice is a residuary legatee, was removed from the office of executor, is indebted to the estate for a larger sum than the amount of his share as such legatee, and the plaintiff was appointed administrator *de bonis non*, with the will annexed; that Rice, the executor, pledged certain stocks specified to his bankers in Boston, to secure the balance of their account, $4,544.73, for payments made by them on account of the estate, and the plaintiff has paid that sum with money borrowed for the purpose, to secure which he has repledged the same stocks; that the executor's bond is exhausted by the suits upon it, and that there is no estate in the hands of the plaintiff, except certain land in Portsmouth valued at about $8,000, and George S. Rice, James P. Upham, and George S. Rice, executors of Elizabeth W. Upham, Elizabeth O. Coffin, Ann P. Ketchum, and Mary W. Ketchum, executrices of John P. Coffin, residuary legatees, who have received only a small sum in stocks distributed, claim that the plaintiff shall sell the land and pay the proceeds to them towards their share as residuary legatees under the will, but the first seven residuary legatees, who have each received a larger sum than either of the three other legatees would receive by taking the proceeds of the sale of the land, object to such distribution, and claim an equal interest in the land with them.

Edwin T. Rice and George W. Rice, two of the residuary legatees, do not appear.

The three who claim the proceeds of the sale of the land answer, admitting the allegations of the bill.

The seven who deny the right of the three to have sold and to take the said proceeds of the sale of land, and claim an equal interest with them in the land itself, demur to the bill, and say the court has no jurisdiction of the case, but that application should have been made to the probate court for license to sell the land.

The same defendants also file an answer, admitting many of the material allegations of the bill, and say that before the executor Rice was removed, the probate court decreed to be distributed to each of the residuary legatees the sum of $5,500, and that the sums alleged in the bill to have been received by them were received by payment of money, distribution of stocks and suits on the bond, in

payment of the amount decreed, and that they have received no more than the sum decreed; that at the time the decree was made, the executor had in his hands more than enough funds of the estate to satisfy all demands against it and pay each residuary legatee the share decreed; and that the three legatees who have not received their share, and claim to take the land towards making it up, have been negligent, and might with due diligence have collected their share.

A referee found that a petition for the removal of Edwin T. Rice from the office of executor was filed in probate court by a part of the residuary legatees in the year 1875, and the removal was opposed by a majority of the residuary legatees, including the three who claim the proceeds of the sale of the land, and the removal was not made until August, 1876, when a majority of the residuary legatees had joined in the petition. The legatees who requested the retention of Mr. Rice as executor, believed in his honesty, integrity, and ability.

The probate court decreed in January, 1876, that the sum of $5,500 be paid to each of the residuary legatees.

The residuary legatees have received since then money, stocks,, and from suit on executor's bond, as follows:

Ann P. Coffin, $5,683.01.
Susan G. Coffin, $5,683.01.
Charlotte G. Coffin, $5,683.01.
Charlotte P. Westinghausen, $5,683.01.
George G. Dyer, adm'r of Thomas M. Coffin, $5,683.01.
Samuel E. Sewall, adm'r of Ann P. Westinghausen, $5,683.01.
Mary A. P. Bowers, $4,446.54.
George W. Rice, $3,725.93.
George S. Rice, $725.93.
James P. Upham and George S. Rice, ex'rs of Elizabeth W. Upham, $725.93.
Elizabeth O. Coffin, Ann P. Ketchum, and Mary W. Ketchum, ex'rs of John P. Coffin, nothing.

The stocks were distributed under an agreement made between all the defendants, January 30, 1877, to divide them equally as near as might be in value. Those given to the first six legatees were paid by Rice, the executor; the others by the plaintiff. The executor's bond was for $10,000, and was exhausted by the suits of the general legatees for unpaid interest on legacies, and of the first seven of the legatees.

The plaintiff was appointed administrator May 14, 1878, and received of Kidder, Peabody & Co., to whom they had been pledged by the executor to secure the balance of their account for payments on account of the estate, certain stocks, a portion of which he turned over to each of the residuary legatees, George W. Rice, George S.

Rice, and the representatives of Elizabeth W. Upham, amounting to $725.93 each. If the remainder of these stocks should be distributed, under the agreement of January 30, 1877, to the legatees who have received none and those who have received the least amount, those legatees would not receive so much in stocks as the first six have received.

The plaintiff has bargained the land for $8,000, and by agreement of all parties a conveyance is to be made by the plaintiff, or by the residuary legatees, as the court shall deem the proper party on the law and facts of the case, without prejudicing the legal rights of the parties. If the proceeds of the land shall be divided equally among the three legatees claiming it, George S. Rice, the representatives of Elizabeth W. Upham, and the representatives of John P. Coffin, neither will receive so much as any one of the seven legatees receiving $3,500 each has received in money. The plaintiff has no other assets of the estate, excepting the land and the unsold stocks. Edwin T. Rice has been personally insolvent ever since his removal from the trust. The three legatees claiming the proceeds of the sale of the land have acted in good faith, repeatedly demanded payment of the executor after the decree of January, 1876, and the executor has repeatedly promised to pay, and the legatees relied on that promise. They commenced no legal proceedings to recover what was due them, and by greater diligence the general legatees and the first seven of the residuary legatees endorsed their claims on the writ in the suit on the probate bond, and exhausted it, thereby rendering legal proceedings on the part of the other residuary legatees futile. They were not guilty of negligence.

*Rollins*, for the administrator.

*S. H. Goodall*, for the seven residuary legatees who have received most.

*Geo. B. Upham* and *Frank W. Proctor* (of Massachusetts), for other three residuary legatees.

DOE, C. J. When a will requires the executor to dispose of real estate, the probate court may license the administrator to sell the same for the purpose and in the manner intended by the testator. G. L., c. 201, s. 11. This section authorizes the probate court to give the administrator the power of sale which the will gives the executor. It does not require a license for the exercise of a power given by the will to the administrator. And a license is not necessary in this case, because the will expressly authorizes a sale by any person legally qualified to administer upon the estate; and the administrator is such a person.

Under the will giving the residue to the eleven first cousins of

the testatrix, the residuary legatees take equal shares.  The administrator has no more power to give one of them more and another less than one eleventh of the residue, than he has to give the whole to one, or none to any, or to violate any other provision of the will.   An equal division of the residue being required by the will, and an exercise of the administrator's power of selling real estate being necessary for such division, it is his duty to exercise that power, and to make such payments of the proceeds as will accomplish that division.

All the decrees and agreements in relation to the settlement of the estate were apparently made without any intention of violating the testamentary requirement of equality among the residuary legatees, and with the understanding that their equal rights would be maintained by all necessary proceedings in the final settlement. Upon this construction of the decrees and agreements, all the objections of seven residuary legatees to an equal division of the entire residue are overruled, except the objection that three of the others were negligent, and that the seven are entitled to retain the fruits of their own diligence.   On this point the facts have not been fully found.   Whether the seven, by their diligence, obtained property which, without their efforts, would have been lost; whether anything was lost by the want of any degree of diligence in the three; and whether, by any degree of diligence, each of the three would have received as much as was secured by each of the seven,—are questions we do not decide upon the evidence.   Of this part of the case there should be a new trial.

*Demurrer overruled, and case discharged.*

ALLEN, J., did not sit: the others concurred.

The foregoing opinion having been delivered at the June term, 1879, a further hearing was had before the referee, who made an additional report, the nature of which sufficiently appears in the opinion of the court delivered at the June term, 1880, by

SMITH, J.   The referee has not found that the defendants, designated as " the seven," obtained by their diligence property which otherwise would have been lost; nor whether their diligence saved any part of the estate not already distributed; nor whether any of the estate not distributed has been lost by want of any degree of diligence in the defendants designated as " the three "; nor whether by extra diligence each of the three would have received as much as each of the seven ; nor do the facts reported by the referee in detail establish the affirmative of either of these propositions.

The removal of the executor was opposed by the three defendants in 1874–'75, as it was also by three of the seven defendants,

and was prosecuted by one only of the seven. The opposition to his removal did not prevent the petitioner from showing that the executor was an unfit person for the trust, or from showing any facts that would warrant the probate court in granting his petition.

The decree of the probate court, made January 11, 1876, requiring the executor to pay to each of the residuary legatees $5,500, is in no way modified or impaired by the decree in this suit. The sum collected by each of the seven in the suit upon the executor's bond must be reckoned as a part, and not in excess, of the sum of $5,500. An accurate accounting of the receipts and disbursements of the executor does not seem necessary for the purposes of this suit, for the referee finds that if the remaining assets (including the proceeds of the store and lot) should be distributed to the legatees who have received nothing, or to those who have received the least amounts, those legatees would not receive so much as six of the seven defendants. It was settled by the former decision that the will required equality among the residuary legatees. As the will gives the residue as a whole to the residuary legatees on the principle of equality, the distinction between real and personal property cannot be maintained for the purpose of making an unequal division of the residue in violation of the will. From the assets in the hands of the administrator, including the proceeds of the store and lot, the representatives of John P. Coffin are first to be paid till his share is made equal to the amount received by the representatives of E. W. Upham, with interest; then to the representatives of J. P. Coffin and E. W. Upham is to be paid a sum sufficient to make their respective shares equal to the next highest sum paid to the residuary legatees, and so on until the assets are exhausted.

As three of the defendants are the prevailing party, they are entitled to recover costs against seven of the others, and the administrator will recover his costs from the funds of the estate. The court at the trial term will also inquire into the costs and expenses of all parties, and make such an adjustment and equalization of all such reasonable and necessary costs and expenses incurred by all parties as have tended to the common benefit, and such as ought to be borne by all, to the end that the rule of equality, prescribed by the will, may be fully carried out; and such decree will be made, upon consideration of interest, costs, and expenses, as will follow that rule with exactness sufficient for practical justice.

*Case discharged.*

CLARK, J., did not sit: the others concurred.